[No. B089385. Second Dist., Div. Six. Oct. 18, 1995.]

JOHN E. HUPP, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, COUNTY OF
SANTA BARBARA et al., Respondents.

**COUNSEL**

John E. Hupp, in pro. per., for Petitioner.

Stephen Shane Stark, County Counsel, Martin G. McKenzie and David Allen, Deputy County Counsel, for Respondents.

## OPINION

STONE (S. J.), P. J.—Is an employer paying benefits pursuant to Labor Code section 4850[1] entitled to a credit for the gross self-employment income of the injured worker or should the credit be reduced by subtracting expenses related to the production of that income? We hold that the credit is limited to the net earnings of the worker after subtracting expenses reasonably related to the production of self-employment income. We annul that portion of the decision of the Workers' Compensation Appeals Board (Board) holding otherwise.

### FACTS

Applicant John E. Hupp was employed as a deputy sheriff by defendant County of Santa Barbara (County) from February 17, 1982, through December 5, 1992. He sustained orthopedic injuries in 1989 while unloading gurneys when assigned to coroner investigations. He was later reassigned to patrol duties, but experienced severe back pain which prevented him from performing that assignment. He became temporarily disabled and claimed benefits pursuant to section 4850.[2]

On February 3, 1994, the workers' compensation judge issued findings that Hupp was entitled to 36 percent permanent disability and one year of full salary in lieu of temporary disability payments, pursuant to section 4850, "less credit for applicant's off the job earnings."

On January 29, 1994, County asked Hupp for documentation of his outside earnings during the period section 4850 wages were due him. He had earned additional outside income by giving music lessons, playing his musical instrument, and servicing musical equipment prior to his disability. He continued this self-employment after becoming disabled.

On May 24, 1994, County received a copy of schedule C from Hupp's 1993 tax return which reflected gross outside earnings of $2,846, but a net loss of $1,646 after deducting expenses.[3] County asked for further information regarding Hupp's income for December of 1992 and January of 1994. On June 23, 1994, Hupp reported he had gross earnings of $15 in December

---

[1] All statutory references are to the Labor Code unless otherwise stated.

[2] Section 4850 provides that certain public safety workers are entitled to take, in lieu of temporary disability benefits, a leave of absence up to one year without loss of salary.

[3] Hupp's itemized expenses were $26 for advertising, $1,838 for car and truck expenses, $1,770 for depreciation, $140 for repairs and maintenance, $161 for supplies, $117 for deductible meals and entertainment, $190 for wages paid to others, $66 for music, $57 for postage, $8 for bank fees, $115 for equipment, and $4 for copying.

of 1992, with expenses of $131.42, and gross earnings of $165 in January of 1994, with expenses of $236.51.[4]

On July 21, 1994, County paid Hupp the section 4850 benefits less $3,026, the gross earnings reported by Hupp. Following a hearing, the workers' compensation judge found that County was not entitled to any credit for Hupp's self-employment earnings because his tax returns and supplemental earnings reports reflected a loss during that period. County sought reconsideration. In his report on reconsideration, the workers' compensation judge said that it was fair to base the offset on net earnings, as determined by standards acceptable to the Internal Revenue Service, and recommended reconsideration be denied.

The Board granted reconsideration. In its decision, the Board stated: "Deductions for expenses are not typically allowed in workers' compensation proceedings, in instances in which credits against earnings are awarded. For example, we would not allow mortgage tax deductions against a credit for wage earnings. Similarly, the gross earnings of the applicant here are subject to defendant's credit. Applicant's reduction of his taxable income by depreciating his business property is not an expense recognized in workers' compensation proceedings." The Board amended the award to allow County a credit for Hupp's gross self-employment earnings.[5]

## DISCUSSION

■ County is entitled to credit for Hupp's self-employment earnings against its obligation to pay his full salary under section 4850. (*Kosowski* v. *Workers' Comp. Appeals Bd.* (1985) 170 Cal.App.3d 632, 634 [216 Cal.Rptr. 280].) In *Kosowski*, the worker obtained a license to operate a dealership from a barn on his property and sold used cars during his period of disability. The reviewing court held Kosowski's self-employment earnings could be used as an offset against his 4850 benefits.[6] The court did not discuss whether the offset was to be based on gross or net earnings.

However, the *Kosowski* court concluded its discussion by stating: "Of course, if it develops that Kosowski received no earnings from self-employment during the period he received full salary in lieu of temporary disability,

---

[4]It is unclear why County required information regarding amounts earned during more than a one-year period when Hupp was entitled to only one year of section 4850 benefits.

[5]The Board did not disturb the workers' compensation judge's determination that County was subject to penalties for delaying payment of section 4850 and permanent disability benefits.

[6]The court reasoned the injured worker would receive a windfall if he received his full salary for being disabled during a period when his disability was not so severe that it prevented him from being gainfully employed.

there can be no offset." (*Kosowski* v. *Workers' Comp. Appeals Bd.*, *supra*, 170 Cal.App.3d at pp. 637-638.) This statement implies that Kosowski's self-employment income was not to be based on his gross receipts from selling used cars.

In arguing that the offset should be based on net earnings, Hupp relies on *National Labor R. Board* v. *Brashear Freight Lines* (8th Cir. 1942) 127 F.2d 198. There, the reviewing court determined a court order that an employer pay a wrongfully discharged employee his lost wages less net earnings during his period of unemployment did not allow the employer to deduct groceries provided by a labor union. Although the court used the phrase, "net earnings," in reaching its decision, the court also stated: "Earnings and wages are here not to be distinguished." (*Id.*, at p. 199.) The cited case is not helpful to Hupp because, in order to reach the result he desires, it is necessary to draw a distinction between earnings received through self-employment in one's own business and wages received from an employer.

The Board has called this court's attention to cases which hold that business-related expenses are not to be deducted before computing the wages upon which workers' compensation benefits are to be based. (*Pacific Employers Insurance Co.* v. *Industrial Accident Commission* (1939) 4 Cal.Comp.Cases 208 [salesman who paid his personal traveling and car expenses out of $150 monthly salary entitled to disability benefits based on monthly wages of $150]; *Filippone* v. *Industrial Commission* (1978) 41 Colo.App. 322 [590 P.2d 977] [commission could not reduce injured employee's hourly rate of compensation by deducting expenses of operating truck furnished by him]; *Little Suwannee Lumber Co.* v. *Fitzgerald* (1984) 172 Ga.App. 144 [322 S.E.2d 347] [all payments by lumber company to worker supplying pulpwood were wages with no deduction of worker's production costs].) None of the cited cases discuss the effective income of an injured worker who receives outside income while self-employed.

County argues that the rule that business-related expenses are not to be used as an offset in determining an employee's wages for workers' compensation purposes must apply equally to earnings which are used to offset the obligations of an employer. County points out that, if net income is to be used in determining wages, an employee's workers' compensation benefits should be based on net wages after deducting such work-related expenses as cost of transportation, parking, uniforms, tools, and education.

However, there is a difference between working for another person and being self-employed. An employee ordinarily agrees to work for, and receives, a set wage or salary. His wages are not directly affected by the net

income of the employer. In contrast, the self-employed person operating a "business" such as Hupp's has no more income available than the net income of the "business" after paying necessary expenses of the "business."

Hupp points out that his gross self-employment income included "funds that merely passed through his account," such as "shared concert fees" and "reimbursements on equipment purchased for students." He also notes that "his greatest expense involved transportation costs of going to the client—no transportation, no income."[7]

Both the *Filippone* and the *Little Suwannee* courts noted that workers' compensation statutes are to be liberally construed in favor of the injured worker. This is the also the mandate of section 3202 which states that provisions of the Labor Code regarding workers' compensation "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." Our decision permits a self-employed injured worker, such as Hupp, to receive the full benefits to which he is entitled under section 4850.

It is unfair and unrealistic to deduct from 4850 benefits the gross self-employment income of an injured worker, particularly one who sells merchandise. For instance, a worker who sold $10,000 worth of merchandise with a wholesale cost of $5,000 and who had out-of-pocket business-related expenses of $2,000 would only have $3,000 in actual available earnings. If the offset was based on gross earnings of $10,000 rather than net earnings of $3,000, the worker would be deprived of $7,000 he would have received if he had remained idle. This is an unconscionable penalty for choosing to improve one's lot by being self-employed. To avoid a harsh, unjust result, an injured worker should be allowed to deduct from self-employed earnings the cost of goods sold and all other expenses reasonably related to the production of the self-employment income.

The injured worker should be encouraged to be productive and self-sufficient by earning outside income when a disability prevents the worker from engaging in his or her usual employment. The worker who does so will usually reap the psychological benefits of having greater self-esteem and a greater sense of independence than the worker who remains idle. Under

---

[7]It could be argued that, since the ordinary worker cannot deduct his cost of transportation to and from work, Hupp should not be permitted to deduct transportation expenses. However, an employee has some discretion in choosing the distance from his residence to his place of employment. Moreover, an employee will usually travel to the same place of employment every day and is often reimbursed if his work takes him elsewhere. The self-employed individual who is taking services to clients has virtually no discretion in determining the distance between his residence or place of business and the location of the clients.

certain circumstances, these psychological benefits of self-employment could prove beneficial in speeding recovery from the industrial injury. However, there will be no incentive for a worker to purchase the necessary equipment and supplies for a business, to advertise the business to obtain customers or clients, or to hire others to assist in the income-producing enterprise if these business expenses cannot be deducted from gross earnings.

Admittedly, the self-employed injured worker could seek to reduce his net earnings by incurring tax-deductible expenses which are not reasonably related to the production of income. Additionally, certain expenses recognized as legitimate deductions by the Internal Revenue Service may not be reasonably related to the production of current income.

An employer that, in good faith, questions the legitimacy of a claimed expense is entitled to a hearing at which the employee must establish that the questioned expense is reasonably related to the production of self-employment income. Here, the workers' compensation judge impliedly found that all expenses listed on Hupp's schedule C met this test.

If County, in good faith, believes it will be able to challenge a sufficient amount of Hupp's expenses to establish his self-employment resulted in a profit, rather than a loss, County is entitled to a hearing at which it can do so. In that event, Hupp is to be given sufficient notice of any challenged expense to enable him to gather and present evidence to refute the challenge.

The portion of the decision of the Workers' Compensation Appeal Board giving County full credit for Hupp's gross self-employment earnings is annulled and the matter is remanded for further proceedings consistent with this opinion. Hupp is to receive his full section 4850 benefits unless County, within 30 days of the finality of this opinion, notifies Hupp of any challenged expenses and requests further hearing to determine whether those expenses were reasonably related to the production of Hupp's self-employment income.

Gilbert, J., and Yegan, J., concurred.