Filed 8/13/13 following 7/25/13 pub. order

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STATE FARM GENERAL INSURANCE COMPANY,<br><br>    Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, CALIFORNIA INSURANCE GUARANTEE ASSOCIATION et al.,<br><br>    Respondents. | 2d Civil No. B240742<br><br>(W.C.A.B. Nos. ADJ4684775, ADJ4381820, ADJ7684775)<br><br><br>ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion filed herein on July 1, 2013, shall be modified as follows:

On page 12, footnote 5 shall be deleted in its entirety, which will require renumbering of all subsequent footnotes.

[There is no change in the judgment.]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STATE FARM GENERAL INSURANCE COMPANY,<br><br>    Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, CALIFORNIA INSURANCE GUARANTEE ASSOCIATION et al.,<br><br>    Respondents. | 2d Civil No. B240742<br><br>(W.C.A.B. Nos. ADJ4684775, ADJ4381820, ADJ7684775) |

Proceeding to review a decision of the Workers' Compensation Appeals Board. Annulled and remanded with directions.

Finnegan, Marks, Theofel & Desmond, Ellen Sims Langille, for petitioner State Farm General Insurance Company.

Guilford Steiner Sarvas & Carbonara, Richard E. Guilford; Floyd, Skeren & Kelly, James K. Lowery, for respondent California Insurance Guarantee Association.

No appearance for respondent Workers' Compensation Appeals Board.

Labor Code section 5950 provides that any person aggrieved by a final order, decision, or award of the Workers' Compensation Appeals Board (WCAB) may, within the prescribed time limit, apply to the Court of Appeal for a writ of review. Appellate review is limited to final orders that affect a substantial right or liability of a party. (*Duncan v. Workers' Comp. Appeals Bd.* (2008) 166 Cal.App.4th 294, 299.) The failure of an aggrieved party to seek judicial review of a final order of the WCAB bars later challenge to the propriety of the order or decision before either the WCAB or the court. (*Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1075-1076 (*Maranian*); see also *Safeway Stores, Inc. v. Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 532-535.)

This petition for writ of review challenges the WCAB's decision allowing California Insurance Guarantee Association (CIGA) to pursue a claim for reimbursement against State Farm General Insurance Company (State Farm), after the WCAB had previously rejected the claim and CIGA had failed to timely seek judicial review. We conclude that CIGA's claim is barred by principles of res judicata. We annul the WCAB's decision and remand for further proceedings.

*FACTUAL AND PROCEDURAL BACKGROUND*

On June 8, 1999, and January 20, 2000, Joanne Lutz (applicant) was injured while working as a personal assistant to Linda McDonald, President of Roto Rooter (aka Russell Warner, Inc.). The applicant was on Roto Rooter's payroll at the time. During 1999 and 2000, Roto Rooter was insured for workers' compensation by Fremont Compensation Insurance Company and Paula Insurance Company, respectively. Linda McDonald and her homeowner's insurance carrier, State Farm, were joined as additional parties to the applicant's claim.

In February of 2002, at a mandatory settlement conference, the parties disputed the issues of employment and which insurance carrier should be responsible for coverage of the applicant's claim, i.e., whether the applicant was working as a domestic employee of McDonald at the time of her injuries such that State Farm should provide coverage for her claim, or whether she was employed by Roto Rooter.

2

On March 15, 2002, in lieu of trial, the parties entered into "Joint Stipulations With Request for Award." The parties stipulated that the applicant was employed by Roto Rooter and Linda McDonald, and "sustained injury arising out of and in the course of employment." Paula Insurance Company agreed to administer all benefits under the award, and under any future award. State Farm agreed to "indemnify and/or contribute 25% of all incurred benefits paid to or on behalf of applicant (including, but not limited to TD [temporary disability], PD [permanent disability], medical treatment, and vocational rehabilitation), as to injuries of 6/8/99 and 1/20/00. [¶] Paula Ins. reserves its right to seek contribution from Fremont Compensation Ins. Co." That same day, Workers' Compensation Judge (WCJ) William Carero approved the award allocating liability between the parties. No party sought reconsideration of the award and, consequently, it became final between these parties.

In June of 2002 and July of 2003, Paula Insurance Company and Fremont Insurance Company, respectively, were liquidated. CIGA assumed administration of the claim. Since then, State Farm has been reimbursing CIGA for 25 percent of all benefits paid to the applicant.

In September of 2003, CIGA filed a petition for dismissal, arguing it should be dismissed because Paula Insurance Company had not provided workers' compensation coverage for residential or domestic employees. State Farm opposed the petition, contending the evidence supported a finding of employment by Roto Rooter and coverage, and that the March 15, 2002, stipulated award was final and binding on CIGA. The record before us discloses no action on this petition.

In February of 2008, five years later, CIGA sought to be relieved as administrator of the applicant's claim. CIGA filed a declaration of readiness with the WCAB, stating that the parties were unable to "resolve the dispute concerning employment as a domestic employee versus employment with Roto Rooter." CIGA requested resolution of the questions (1) "whether State Farm homeowner's insurance qualifies as 'other insurance' to make the claim against CIGA a non-covered claim per Insurance Code section

1063.1"; and (2) whether the applicant qualifies as a domestic employee under Labor Code section 3351, subdivision (d).

On April 4, 2008, the WCJ ruled that the WCAB was without jurisdiction to rescind or alter the March 15, 2002, stipulated award, and that CIGA was bound by the stipulation. The WCJ reasoned: "Labor Code section 5804 confers limited power upon the Board to rescind, alter or amend its Awards. That power is limited by the statutory language as to time and as to content. Specifically, that Section states 'that after an award has been made finding that there was employment and the time to petition for a rehearing or reconsideration or review has expired . . . , the appeals board upon a petition to reopen shall not have the power to find that there was no employment.' This includes determination of the identity of the employer previously determined by the Award. [¶] Neither does the subsequent liquidation of the Paula Insurance Company and Fremont Indemnity . . . permit CIGA to upset the final legal determination as to employment. . . . [¶] In essence, CIGA avers that it is not bound by the Award entered against the then-solvent carriers for which CIGA is now responsible to the extent the Insurance Code requires. [¶] No determination is made as to the extent of CIGA's ultimate liability under the March 15, 2002 Award. It is found nevertheless that the Award binds CIGA." CIGA did not seek reconsideration of the WCJ's order before the WCAB. (Lab. Code, § 5900.)

Two months later, on June 9, 2008, CIGA filed a petition for reimbursement and for a change of administrator, renewing its claim that it should be relieved of responsibility to pay benefits because of the presence of other insurance. (Ins. Code, § 1063.1, subd. (c)(9).)[1] CIGA argued that State Farm was jointly and severally liable for the benefits paid by CIGA, and as solvent "other insurance" must reimburse CIGA in full for all temporary disability benefits, medical treatment, and medical-related expenses. CIGA requested that State Farm reimburse it $382,833, less credit for payments made by State Farm.

---

[1] Insurance Code section 1063.2, subdivision (a) limits CIGA's liability to paying for "covered claims." Insurance Code section 1063.1, subdivision (c)(9) provides that "covered claims" do not include "a claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant or insured."

4

State Farm opposed the petition, arguing that (1) CIGA's failure to seek reconsideration of the WCJ's decision on April 4, 2008, precluded it from relitigating its reimbursement claim (Lab. Code, § 5804); (2) State Farm's homeowner's insurance policy does not constitute "other insurance" as defined by the Insurance Code because its policy was not "available to the claimant or insured" (Ins. Code, § 1063.1, subd. (c)(9)); and (3) CIGA's claims were barred by the equitable doctrine of laches.

In May of 2009, CIGA filed a declaration of readiness (presumably for its June 2008 petition), seeking dismissal as a party-defendant on the ground that "'other solvent insurance' is available" pursuant to Insurance Code section 1063.1, subdivision (c)(9). According to the pretrial conference statement, the parties proceeded to trial on issues including: (1) whether CIGA should be dismissed pursuant to Insurance Code section 1063.1, subdivision (c)(9), because "other solvent insurance" is available; (2) joint and several liability/reimbursement from State Farm; (3) Insurance Code section 11590 provides that domestic workers are covered under homeowner's insurance policy for workers' compensation; and (4) petition to change administrator.

On June 25, 2009, the WCJ conducted a hearing on CIGA's petition. The minutes of the hearing specify that the issue of whether there was "good cause to dismiss CIGA due to the presence of other insurance" was "raised and accepted to be heard" as part of the trial. With respect to this issue, the WCJ ruled: "The presence of other insurance in this case does not support good cause to dismiss CIGA. [CIGA] has already been determined [to be] bound by the [Stipulated Award of March 15, 2002]; and that determination having been made on April 8th, 2008, without any appellate response, remains the law of this case, and the motion of CIGA to be dismissed is therefore denied."

CIGA then sought reconsideration by the WCAB, contending that CIGA is statutorily prohibited from making payments to the applicant and must be dismissed pursuant to Insurance Code section 1063.1, subdivision (c)(9) because other solvent

5

insurance is available. CIGA argued that our decisions in *Weitzman* and *Hooten* entitle it "to shift the entire amount of joint and several liability onto the still-solvent carrier."[2]

On July 28, 2009, the WCJ recommended the WCAB deny reconsideration, reasoning that "[r]ight or wrong, the 2008 decision on jurisdiction to rescind, alter or amend the 2002 stipulated award is the law of this case. [¶] [CIGA] seeks to distinguish the issue here presented from that presented in 2008. However, both efforts boil down to an effort to impose the liability in this case solely on State Farm." The WCJ explained that CIGA "remains liable because the 2002 stipulation and award was a finding of employment which was not the subject of a petition for reconsideration and was followed by a decision six years later that jurisdiction to change the terms of the 25%/75% deal was lacking. The 2008 decision in turn became final." The WCJ also observed that CIGA was barred by laches from attempting to avoid the stipulated award "where five to six years elapse with the injured worker and the homeowner carrier relying upon the deal they struck." On October 15, 2009, the WCAB adopted WCJ Carero's recommendation and denied CIGA's petition for reconsideration. CIGA did not file a petition for writ of review in the Court of Appeal.

In January of 2010, CIGA proceeded to trial on the applicant's claim of permanent disability, future medical treatment, a lien claim by the Employment Development Department (EDD), and other related issues. On April 27, 2010, the WCJ issued his decision granting the applicant permanent disability of 39 percent and awarding benefits against CIGA for future medical treatment. The WCJ ordered CIGA to reimburse the EDD for disability benefits provided to the applicant.

In May of 2010, CIGA sought reconsideration of the WCJ's decision, contending that the WCJ should have found that the applicant was jointly employed by Roto Rooter and Linda McDonald on the date of injury, and the award should have identified State Farm as jointly liable for all benefits due the applicant.

_____

[2] See *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2005) 128 Cal.App.4th 307, 320 (*Weitzman*) ["covered claims" under Ins. Code section 1063.1, subdivision (c)(9), do not include claims covered by other solvent insurers in situations of joint and several liability]; *CIGA v. Workers' Comp. Appeals Bd.* (2005) 128 Cal.App.4th 569, 573 (*Hooten*) [even in absence of joint and several liability, "covered claims" under section 1063.1, subdivision (c)(5) do not include claims by other insurers].)

6

The WCJ recommended that reconsideration be granted in part to correct certain miscalculations he had made in the amount of permanent disability and to eliminate CIGA's obligation to reimburse the EDD. The WCJ also clarified that CIGA is the party liable for the benefits due the applicant, and that "State Farm remains obligated to its co-defendant(s), but not to the applicant." The WCJ recommended denial of CIGA's reconsideration petition in all other respects.

On January 18, 2011, the WCAB adopted the WCJ's recommendations in all respects and modified the WCJ's award accordingly. The WCAB amended the award to conform to the 2002 stipulation by identifying Linda McDonald as an additional employer on the date of injury. The WCAB rejected CIGA's contention that the award should be amended to reallocate liability for the applicant's claim to State Farm by finding it jointly and severally liable. The WCAB reasoned that CIGA's contentions were rejected by the WCJ in his decisions of April 4, 2008, and July 13, 2009, and by the WCAB when it denied reconsideration on September 1, 2009. Because CIGA did not appeal those decisions, the WCAB concluded they "are now final and the law of the case."

The WCAB stated: "We recognize that several appellate cases describe limits of CIGA's liabilities in cases where solvent insurers are 'available' to provide an injured worker with benefits within the meaning of Insurance Code section 1063.1(c)(9), notwithstanding that the insolvent insurer would be liable for those benefits but for the insolvency. [Fn. and citations omitted.] However, those cases did not involve a request by CIGA to amend an award made more than five years earlier by stipulation of all the solvent insurers. In this situation, Labor Code section 5804 precludes CIGA's request to re-allocate liability by amending the 2002 stipulated award."[3] Once again, CIGA elected not to petition for a writ of review in the Court of Appeal.

On April 18, 2011, CIGA filed another declaration of readiness, renewing the issue of reimbursement. CIGA stated that "[t]he parties require the intervention of the WCAB to resolve the dispute between CIGA and State Farm concerning

---

[3] Labor Code section 5804 provides in part: "No award of compensation shall be rescinded, altered, or amended after five years from the date of the injury except upon a petition by a party in interest filed within such five years . . . ."

7

contribution/reimbursement." On June 2, 2011, the WCJ conducted a hearing on: (1) whether res judicata bars further proceedings on reimbursement; and (2) whether good cause exists to refer the matter to arbitration. On July 29, 2011, the WCJ denied CIGA's request for trial of its claim for reimbursement and/or contribution. He found that the respective liabilities of the parties had previously been finally determined and could not be "relitigated by way of seeking contribution or reimbursement."

CIGA then petitioned the WCAB for reconsideration, contending that it may proceed with its reimbursement claim against State Farm because (1) CIGA and State Farm are jointly and severally liable under the 2002 stipulated award; and (2) it is not precluded from seeking reimbursement by either res judicata or Labor Code section 5804. CIGA pointed to the wording of the WCJ's April 2008 decision, stating that "[n]o determination is made as to the extent of CIGA's ultimate liability under the March 15, 2002 Award." CIGA argued that it relied on this language in not appealing or seeking reconsideration earlier, believing that it meant that Insurance Code section 1063.1 might still shift all liability to State Farm. CIGA argued that the issue of CIGA's right to reimbursement against State Farm was raised for the first time in CIGA's declaration of readiness filed on April 18, 2011, and the issue was not "identical" to the issues previously decided.

On August 25, 2011, the WCJ disagreed with CIGA, concluding its reimbursement claim was not made in good faith and was not supported by the cases cited. The WCJ stated that no determination as to the ultimate liability of any party was possible in 2008 because the extent of the applicant's permanent disability was still being evaluated. The WCJ noted this did not prevent CIGA from appealing or seeking reconsideration of the 2008 determination that it was bound by the 2002 stipulated agreement. The WCJ concluded that "[r]egardless of the semantics employed," CIGA's renewed effort to "re-allocate liability by amending the 2002 stipulated award" was barred by "the component of *res judicata* known as issue preclusion."

On December 19, 2011, the WCAB granted reconsideration, notwithstanding its contrary decision 11 months earlier (on January 18, 2011), ruling against CIGA on the question of whether it could pursue a reimbursement claim under Insurance Code section

8

1063.1, subdivision (c)(9). The WCAB noted that CIGA was not a party to the 2002 stipulation and was not seeking to amend the earlier 2002 award. Instead, it reasoned, CIGA was seeking to enforce its statutory right under Insurance Code section 1063.1 to obtain reimbursement from a solvent insurer that is "available" to provide benefits to the applicant within the meaning of the statute. The WCAB reasoned that the 2002 stipulated award and the five-year limitations period of Labor Code section 5804 were not dispositive of CIGA's petition for reimbursement. The applicant was jointly employed by Linda McDonald and Roto Rooter when she was injured. "Because applicant had two employers . . . each employer and their respective insurers on those dates of injury are as a matter of law jointly and severally liable for workers' compensation benefits that are due."

The WCAB went on to reason that the 2002 stipulation did not change State Farm's joint and several liability to the applicant. "This is because agreements between employers and/or their insurers cannot diminish or eliminate an applicant's right to recover benefits from the employers and insurers that are jointly and severally liable for the injury. . . . When Freemont and Paula became insolvent, State Farm became 'available' to applicant as 'other insurance' under Insurance Code section 1063.1(c)(9) because McDonald is jointly and severally liable for applicant's injuries. [¶] Because State Farm appears to be 'other insurance' that is 'available' . . . within the meaning of Insurance Code section 1063.1(c)(9), it appears to be responsible for the provision of workers' compensation benefits that are due because of her injuries."

The WCAB concluded "[t]here has been no earlier final decision on CIGA's petition to obtain reimbursement from State Farm. Thus, there is no basis for denying the petition for reimbursement on the grounds of res judicata or collateral estoppel as concluded by the WCJ in his August 25, 2011 Report." Accordingly, the WCAB rescinded the WCJ's decision and returned the case to the trial level for further proceedings on CIGA's petition for reimbursement.

Thereafter, State Farm petitioned the WCAB for reconsideration. State Farm argued that the question whether homeowner's insurance qualifies as "other insurance" under Insurance Code section 1063.1 was expressly raised by CIGA and decided against it

9

by the WCJ in April of 2008, and by the WCAB in September of 2009. State Farm contended these decisions were final and entitled to *res judicata* effect. Alternatively, State Farm contended that CIGA's request for reimbursement was barred by the doctrine of laches. State Farm pointed out that it will suffer irreparable harm and prejudice should CIGA be allowed to re-litigate its request for reimbursement. State Farm pointed out that if CIGA is allowed to seek reimbursement in an amount greater than 25 percent, it will have been denied due process by being precluded from litigating the issue of employment. State Farm abided by the terms of the stipulated award and detrimentally relied on it by withdrawing its challenge to the employment issue in 2002.

On March 14, 2012, the WCAB denied State Farm's petition for reconsideration. State Farm's petition for writ of review followed.

*DISCUSSION*

The dispositive question before us is whether CIGA's reimbursement claim is barred by res judicata or laches.[4] It is well settled that these doctrines apply in workers' compensation litigation. (*Azadigian v. Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 372, 379-380; *United Dredging Co. v. Industrial Acc. Com.* (1930) 208 Cal. 705, 713-714.)

Labor Code section 5950 provides that a party "affected by an order, decision, or award" of the WCAB may, within the prescribed time period, apply to the Court of Appeal for a writ of review "for the purpose of inquiring into and determining the lawfulness" of the order, decision, or award. "[A]ppellate review . . . is limited to 'final' orders that determine a substantial right or liability of a party." (*Duncan v. Workers' Comp. Appeals Bd., supra,* 166 Cal.App.4th at p. 299.) An order of the WCAB is final for the purpose of seeking judicial review when it "settles, for purposes of the compensation proceeding, an issue critical to the claim for benefits, whether or not it resolves all the issues in the proceeding or represents a decision on the right to benefits." (*Maranian*, *supra*, 81 Cal.App.4th at pp. 1075, 1078; *Wal-Mart Stores, Inc. v. Workers' Comp. Appeals Bd.* (2003)

---

[4] We reject CIGA's contention that State Farm's petition for writ of review should be dismissed as premature. We also reject CIGA's contention that our standard of review is abuse of discretion. The application of the doctrine of *res judicata* is a question of law we review de novo. There are no factual issues involved in this determination.

10

112 Cal.App.4th 1435, 1438, fn. 3; *Safeway Stores, Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.3d at pp. 534-535.)  Such final orders include, for example, threshold orders dismissing a party, rejecting an affirmative defense, terminating liability, or determining whether the employer has provided compensation coverage.  (*Maranian,* at pp. 1075, 1078.)

The characterization of an order or decision as final and susceptible to judicial review has critical consequences.  The failure of an aggrieved party to seek judicial review of a final order of the WCAB bars later challenge to the propriety of the order or decision before either the WCAB or the court.   (*Maranian, supra*, 81 Cal.App.4th at p.1076; see also *Rymer v. Hagler* (1989) 211 Cal.App.3d 1171, 1182.)  The purpose of this rule is to facilitate early disposition of core questions, and promote the public policy favoring expeditious and inexpensive resolution of workers' compensation claims.   (*Maranian,* at p. 1078.)

CIGA contends that State Farm cannot point to any place in the record where CIGA's right to reimbursement was consciously raised and litigated prior to the WCAB's decision on December 19, 2011.  CIGA denies that its right to reimbursement was litigated in April of 2008, June of 2009, or January of 2011.  We disagree.

In 2008, CIGA filed a formal "Petition for Reimbursement," requesting resolution of the question whether the homeowner's insurance policy qualified as "other insurance" to make the claim against CIGA a non-covered claim under Insurance Code section 1063.1.  The WCJ found the WCAB lacked jurisdiction to rescind or alter the 2002 stipulated settlement agreement and that CIGA was bound by it.  In 2009, CIGA again asked the WCJ to resolve the questions whether it should be dismissed pursuant to Insurance Code section 1063.1 because "other solvent insurance" was available, whether joint and several liability existed for State Farm, and whether administration of the claim should be changed.  On October 15, 2009, the WCAB adopted the WCJ's findings that CIGA was bound by the 2002 stipulated settlement and barred by laches from attempting to avoid it.  Finally, on January 18, 2011, the WCAB rejected CIGA's contention that liability should be re-allocated to State Farm because State Farm was jointly and severally liable for the

11

applicant's injuries. Contrary to CIGA's contention, its entitlement to reimbursement was expressly raised in these proceedings in 2008, 2009, and 2011, and determined adversely to it. CIGA did not seek judicial review of any of these decisions. Consequently, these decisions have become final and conclusive. CIGA is barred by res judicata from relitigating its right to reimbursement.

Next, CIGA contends that State Farm misapprehends the obligations created by the 2002 stipulated settlement agreement. It argues that, in the agreement, both Roto Rooter and Linda McDonald admitted concurrent employment. Dual employers are jointly and severally liable for payment of all compensation due the injury of the shared employee. (*McFarland v. Voorheis-Trindle Co.* (1959) 52 Cal.2d 698 [where relationship of general and special employment exists, injured worker can look to both employers for compensation benefits].)

CIGA adds that its right to reimbursement is statutory and it has no statutory liability for claims covered by other available solvent insurance. (Ins. Code, § 1063.1, subd. (c)(9).) CIGA argues that State Farm's agreement to pay 25 percent of the applicant's benefits does not "trump" CIGA's statutory obligations.

We need not address the ultimate question of whether State Farm is jointly and severally liable for 100 percent of the applicant's claim, or whether its homeowner's insurance policy is "other insurance" under Insurance Code section 1063.1, subdivision (c)(9), because CIGA did not preserve its right to pursue these issues.[5] Right or wrong, the WCJ's decision in 2008, and the WCAB's 2009 and 2011 decisions are final, and CIGA may not invoke the jurisdiction of the WCAB or this court to review the lawfulness of those decisions.

The cases cited by CIGA regarding its statutory right to reimbursement are distinguishable. In each of the cases CIGA cites, unlike the facts of this case, CIGA's request for reimbursement due to the presence of other solvent insurance was timely brought

---

[5] We question whether homeowner's insurance qualifies as "other insurance" under section 1063.1, subdivision (c)(9), because it is not "available to the claimant." The parties have not briefed whether CIGA is relieved from liability under Insurance Code section 1063.1, subdivision (c)(5) [covered claims do not include obligations to insurers nor their claims for contribution or indemnity].

12

before the WCAB or the Court of Appeal. (E.g., *Sherman Loehr Custom Tile Works v. Workers' Compensation Appeals Board* (2003) 68 Cal.Comp.Cases 1262 [two carriers stipulated to percentage of liability before one carrier liquidated; WCAB granted CIGA's timely petition for a change of administrators because other solvent insurance available].)

We recognize that the Legislature has limited CIGA's liability to "covered claims." (Ins. Code, § 1063.1.) CIGA's "powers, duties and responsibilities are strictly defined and circumscribed by statute; they are not co-extensive with the duties owed by the insolvent insurer." (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 524, 532.) Nevertheless, this statutory policy limiting CIGA's liability to covered claims must be weighed against the strong "public policy interests in an expeditious and inexpensive system of workers' compensation, the encouragement of settlements of workers' compensation proceedings to further that system, the justified expectations of parties dealing with CIGA, the importance of there being an end to litigation, the resulting finality of judgments, and CIGA's role in obtaining the order at issue." (*Fireman's Fund Ins. Co. v. Workers' Compensation Appeals Bd.* (2010) 181 Cal.App.4th 752, 770.)

Here, the applicant was 61 years old on the date of her first injury in 1999. She is now 75 years old and the issue of liability for her claim continues to be litigated despite CIGA's failure to seek judicial review of adverse decisions in 2008, 2009, and 2011, and the stipulated settlement over a decade ago. In these circumstances, the strong public policy in favor of CIGA's paying only covered claims does not outweigh the policy interests enumerated above. (See *Fireman's Fund Ins. Co. v. Workers' Compensation Appeals Bd.*, *supra*, 181 Cal.App.4th at p. 770.)

In light of our determination that CIGA's reimbursement claim is barred by principles of res judicata, we need not address State Farm's alternative contentions that it would be deprived of due process if CIGA is allowed to pursue its reimbursement claim, or

13

that CIGA's claim is barred by laches.  Contrary to CIGA's contention, these issues were preserved for review and raise substantial concerns.[6]

We annul the WCAB's order of March 14, 2012, denying State Farm's petition for reconsideration.  We remand the matter to the WCAB for further proceedings consistent with this opinion.  Costs are awarded to State Farm.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

---

[6] State Farm argues that CIGA has not diligently pursued its reimbursement claim since it took over administrating the claim in 2003 and that it will suffer prejudice from CIGA's delay, including loss of control over supervision of the medical treatment, deterioration of evidence, diminishment of witness memory, and its withdrawal of a defense to the issue of employment.  (See, e.g., *ICW Group v. Workers' Compensation Appeals Board* (*Fieldhouse*) (2003) 68 Cal.Comp.Cases 1217 [writ denied; president of company has wide discretion to place domestic employees on corporate payroll; liability for employee's injury rests solely with corporation's carrier].)

Filed 7/25/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STATE FARM GENERAL INSURANCE COMPANY,<br><br>  Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, CALIFORNIA INSURANCE GUARANTEE ASSOCIATION et al.,<br><br>  Respondents. | 2d Civil No. B240742<br><br>(W.C.A.B. Nos. ADJ4684775, ADJ4381820, ADJ7684775)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

      The opinion in the above-entitled matter filed on July 1, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.